# Isaac Cook

*v.*

## Jehiel F. Norton *et al.*

1. Limitations — *act of* 1839. To entitle a person to the protection of the limitation law of 1839, his possession must have been adverse ; or in case of payment of taxes on vacant land, payment must have been made under color of title, held adversely to the rightful owner.

2. Same — *the grantee of a judgment debtor may hold*— *as against a purchaser under the execution.* The grantee of a judgment debtor, who acquired title before the expiration of the time for redemption, and who has held the title and possession for seven consecutive years thereafter, claiming in his own right, and has paid the taxes as required by the statute, may set up his possession as adverse, and claim the protection of the limitation law, as against a purchaser under the execution.

3. Limitation of actions — *seven years' limitation act* — *who may claim benefit of.* A junior purchaser may set up the statute of limitation, as against a senior purchaser, from a common grantor, although the elder title may have been duly recorded.

4. Landlord and tenant — *tenancy by sufferance.* And in such case, although the purchaser from the judgment debtor, would be a trespasser, after the execution of the sheriff's deed, yet, he can in no sense be regarded as a tenant at sufferance ; his entry not having been in subordination to the title of any other person, but as owner of the fee, claiming, in his own right, adversely against all persons, and his possession continuing of the same character.

5. Same — *how tenancy by sufferance arises.* A tenancy by sufferance, arises from the termination of some estate less than the fee, and held in subordination to the fee.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Chief Justice, presiding.

This was an action of ejectment, brought, in the court below, by the appellant, Isaac Cook, against the appellees, Jehiel F. Norton, and Emily M. Norton, his wife, Grace Josephine Clark, Julius Wilkie and others, to recover an undivided two-thirds of lot 8, block 23, in the original town of Chicago. Originally, nine different suits were commenced, but subsequently were consolidated into one, and, at the June Term, 1866, a trial was had before the court, a jury having been waived, and judgment rendered for the defendants. From this judgment an appeal was prosecuted to the April term, 1867, of this court, when the judgment was reversed and the cause remanded for a new trial. Upon the second trial, had at the November term, 1867, before the court, a like judgment was rendered, and the plaintiff again brings the cause to this court by appeal. The further facts in the case are stated in the opinion.

Messrs. BECKWITH, AYER & KALES, for the appellant.

Messrs. HIGGINS & SWETT, Mr. I. N. ARNOLD and Messrs. DENT & BLACK, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court :

This case was before this court at its April term, 1867, and the judgment which had been rendered for the defendant was then reversed, because the proof of payment of taxes was deemed insufficient. The case has been again tried in the Superior Court, with a like result, and the plaintiff again brings up the record.

We are of opinion that the former deficiency in the proof of payment of taxes has been supplied, and the evidence fairly

sustains the finding of the court on that point. Indeed, the only position upon which counsel seem to rely is, that the possession of the defendants was not adverse. Without deciding the question in this precise form, when the case was here before, we did substantially decide it, for, after considering the character of the defendant's title, we held it to be one which would be protected by the limitation law of 1839, if the needful proof should be made. We do not, of course, deny that under this, as under every limitation law, the possession must be adverse, or in case of payment of taxes on vacant land, the payment must be made under a color of title held adversely to that of the rightful owner. But in the case before us, while we do not decide that the continued possession of the judgment debtor, whose land has been sold under execution, would be adverse to the title of the purchaser at the sheriff's sale, we have no doubt but that a purchaser from the judgment debtor, who has held the title and possession for seven years, claiming in his own right, and has paid the taxes, as required by the statute, may set up his possession as an adverse possession, and claim the protection of the limitation laws. A junior purchaser may set up the statute as against a senior purchaser from a common grantor, although the elder deed may have been duly recorded. This has been expressly decided by this court, and the rule was referred to in the former opinion in this same case. On this question we are not aware that there has ever been any difference of opinion in the profession.

The proof in regard to possession is very clear. Clark, under a deed from Smith, conveying the entire premises, went into possession in 1847, and he and his representatives, from that date to the trial, remained in open and exclusive possession, claiming the property as their own.

Appellant's counsel, however, say Clark was only a tenant at sufferance, and, hence, could not hold adversely. It is true, he "came in by right, and held over without right," after the

sheriff's deed was due, and this is a generic definition of a tenancy at sufferance. Yet we can not regard him as a tenant at sufferance in such a sense as to preclude him from setting up the statute of limitations. We must not be led too far by a brief definition. He did not enter in subordination to the title of any other person, nor ever, for a moment, hold under another, or acknowledge allegiance to any other. His entry was as the owner in fee, claiming the land in his own right, and adversely to all the world, and his possession continued of the same character. He was no more a tenant at sufferance than one would be who should buy a piece of land of the owner of the legal title, receive a deed therefor and go into possession, and afterwards another person should appear and claim the land, on the ground that he held a prior contract of purchase, which had been duly recorded, and had since received his deed. Would any one deny that the purchaser in possession could protect himself, by proper proof, under the statute of limitations, if more than seven years had elapsed from the time when the prior purchaser had received, or might have received, his deed? There is, in this case, no tenancy, in the sense in which that word is used when it is said, as in the paragraph quoted by counsel, from 1 Washburne 393, that " so far does the principle that regulates the relation of landlord and tenant apply, that a tenant at sufferance will not be permitted to question the title of his lessor in an action to recover possession." The defendant here has never acknowledged a lessor, nor any title as paramount to his own. It is true, the statute of limitations did not begin to run in his favor until the expiration of fifteen months from the sheriff's sale, because, until then, there was no outstanding title upon which suit could be brought. But upon that day the purchaser at the sale, was at liberty to take out his deed, clothe himself with the legal title, and demand possession, and from that day the statute began to run. But although the sheriff's deed, made on that day, would have divested the

24      Cook *v.* Norton *et al.*      [Sept. T.,

Opinion of the Court.

legal title from Clark, and vested it in the purchaser, yet that fact would not convert Clark into a tenant. From that moment he became a trespasser, and might have been sued as such. It certainly would not be contended that before the act of 1861, amending the law of forcible entry and detainer, he would have been liable to that action. That he would not have been, has been expressly decided by this court, in the case of *Steiner* v. *Priddy*, 28 Ill. 179. Even since that act, he would be liable to this action only in the event that he had obtained possession by fraudulent collusion with the judgment debtor, in order to deprive the judgment purchaser of his rights. *Jackson* v. *Warren*, 32 Ill. 333.

Counsel for appellant have referred us to *Jackson* v. *Sternbergh*, 1 Johns. Cases 153; *Jackson* v. *Graham*, 3 Caines' Rep. 189; *Jackson* v. *Collins*, 3 Cow. 89, and *Jackson* v. *Bush*, 10 Johns. 223, as authorities in support of their position. The first of the above cases was merely to the effect, that the continued possession of the defendant in the judgment and execution, after the sheriff's sale and deed to the purchaser, is not such an adverse possession as would avoid a deed by the purchaser to a third person, and the court say the defendant is a *quasi* tenant at will, though even from this doctrine one of the judges dissented. The second case is simply that the defendant in the execution can not defeat an ejectment brought by the purchaser, by setting up an outstanding paramount title—a well settled rule which has been applied by this court. The case in 3 Cowen, merely states, in three lines, that the grantee of the judgment debtor has not such an adverse possession as will avoid a conveyance executed by the purchaser under the execution. That the mere continuance in possession of the judgment debtor, after the sheriff's deed, is not, of itself, a possession adverse to the purchaser, we probably might concede, but that the same rule must be applied to the grantee of the judgment debtor, is held in no case that has been cited, except this in 3 Cowen, and for the decision in

that case the court offers neither reason nor authority. With all due respect for that tribunal, a decision thus announced is not very satisfactory. The case cited in 10 Johns., is to the effect, that the son of the defendant in the execution, who was in possession under a deed, from his father, found to be fraudulent, and therefore, the court say, in without title, could not defeat a recovery by the purchaser at the sheriff's sale, by setting up an outstanding title. The court say the possession was by collusion with the father to defeat creditors.

As already remarked, we see very little in these authorities to support the position of counsel, and our own judgment is against the meagre decision in 3 Cowen. The difference between the judgment debtor and the grantee of the judgment debtor is a very clear one, and, we think, has but to be stated to be recognized. It is this: When the sheriff sells under the judgment and execution, he sells under a power created by law, it is true, but with the same effect, if the proceedings are regular, as if under a power created by the judgment debtor. He does not create a new title, but he sells the debtor's title, whatever it may be, and the debtor has no more right to claim that his possession, after the sheriff's sale and deed, is adverse to the sheriff's grantee, than he would have to set up an adverse possession against his own grantee. But a purchaser, in good faith, from the judgment debtor, is under no such disability, for the reason that the sheriff has not, by authority of law, made a deed purporting to convey his title, and he is as much at liberty to insist upon his possession against the grantee of the sheriff, as he would be as against a prior grantee of the judgment debtor. The prior grantee would recover in ejectment, by proof that both claimed under the same title, and that he held the elder deed, no other proof being given, and the sheriff's grantee could recover upon like evidence, but so far as adverse possession is concerned, if the defendant could set it up against a prior grantee of his own

4—48TH ILL.

26 COOK *v.* NORTON *et al.* [Sept. T.,

Opinion of the Court.

grantor, he surely can against a prior grantee through the agency of a sheriff's deed.

In regard to the tenancy at sufferance, which counsel press, it is rather a curious fact, arising from our system of redemption, that a grantee of the judgment debtor, after a sale by the sheriff, and before the expiration of the fifteen months, should fall so fully within the common definition of a tenant by sufferance, given, by the elementary writers, as being "one who comes in by right, and holds over without right." Yet, as already stated, notwithstanding the definition, we can not admit there is any thing more than an analogy, or that there is such identity as to prevent the running of the statute of limitations. It is said, in the notes to the 9th edition of Watkins' Conveyancing, page 25, that, perhaps, one · reason why the law raised this species of tenancy was, that particular estates might often determine, and the reversioner remain ignorant that they had ceased, and if, in such cases the mere continuance in possession, by the tenant, were held adverse, the reversioner might be barred before he knew of his right to enter. The examples of this tenancy given by the elementary writers are, tenants *per autre vie*, after the death of the *cestui qui vie;* tenants for years whose terms have expired; tenants at will · whose estates have been determined by alienation, or by death of the lessor; undertenants holding over after the expiration of the original lease; and a grantor who agrees to deliver possession by a certain day, and holds over. 1 Wash. on Real Prop. 524. "In short," says the same author, "any one who continues in possession, without agreement, after the determination of the particular estate by which he gained it."

Now, it will be observed, in all these enumerated cases, as well as in the definition designed by the author to be a general one, this tenancy arises from the termination of some estate less than the fee, and held in subordination to the fee. But when the appellees in this case, or rather the person under

whom they claim, bought from the judgment debtor, the fee
itself passed by the latter's deed, subject to be divested by the
sheriff's deed, to be subsequently made.   The purchaser from
the judgment debtor not only *claimed* the fee under his deed,
but he really acquired and held it until the sheriff's deed was
executed, more than thirteen years thereafter.   His possession
did not commence in subordination to the fee, but as a pos-
session united to the fee, and adverse to all the world.   Here,
then, we see a broad distinction between this case and the
examples of a tenancy by sufferance given in the books.
Moreover, if the purchaser at the sheriff's sale had a right to
suppose that the purchaser from the judgment debtor was
buying the fee merely for the purpose of redeeming, he had
no right so to think after the time of redemption expired.
The latter continued in open and  exclusive possession, claim-
ing the land in fee, under a deed that purported to pass the
fee, paying the taxes, and never having, for a moment,
acknowledged subordination to any other title.   His possession
began under his deed, as a  possession hostile to all other per-
sons, and though the statute of limitations did not begin to
run until the expiration of fifteen months from the day of the
sheriff's sale, it was not because there was no  adverse posses-
sion, in fact, until that day, but because, until then, there was
no  person in  being who could bring the suit.   That the
sheriff's deed must be considered as having been made when
the right to it accrued, so  far as the statute of limitations is
concerned, is conceded by the counsel for appellant.

In conclusion, we would  remark, that statutes of limitation
are peculiarly a matter of local law, and we must give ours
the construction which will effectuate the object of its passage,
which was to  quiet colorable titles acquired in  good faith,
and we are not willing to  defeat this object by  applying
what, in a case like the present, would  be very nearly a legal
fiction, and raising thereby a tenancy by sufferance.   If the
deed by the judgment debtor had been made a few days

later than it was, no tenancy by sufferance would have been claimed, and in our opinion the deed, made at the time it was, did not create such an estate as would prevent the running of the statute.

*Judgment affirmed.*

Mr CHIEF JUSTICE BREESE dissenting.