# JAMES W. MARTIN

*v.*

# S. CORNING JUDD.

1. LIMITATION—*title deducible of record under act of* 1835. Where the plaintiff deduces title through a sale on execution against one who had a connected title deducible of record from the United States, and a deed in pursuance of such sale, and the defendant also deduces title through a subsequent sale on another execution issued on a junior judgment against the same party, and a deed in pursuance of such sale, the defendant has a connected title in law deducible of record from the United States, within the meaning of the act of 1835.

2. SAME—*actual residence under act of* 1835, *may be by tenant or vendee under contract of sale.* The actual residence required by the act of 1835 need not be by the owner of the title, in person. It is sufficient if the owner has possession by actual residence, and such residence may be by tenant or by one under a contract to purchase.

3. CONSTRUCTION OF STATUTE. Where one State adopts a statute in force in another, which has been construed by the courts where the act was in force, it is adopted with the construction given to it by such courts.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. C. L. HIGBEE, Judge, presiding.

Mr. J. L. WINTER, for the plaintiff in error.

Messrs. GOUDY & CHANDLER, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This case was before this court at the January term, 1874, and the judgment which had been rendered in favor of the defendant was reversed, and the cause remanded for another trial. The case has been tried again in the circuit court, the result of which was as before, a judgment in favor of the defendant.

But the question now presented is entirely different from the one considered and decided when the case was before us at a former term; then, the main question was as to the validity of a certain deed in the plaintiff's chain of title, made by the Marshal of the Northern District of Illinois to Andrew Hoagland; now, the question is, whether the defendant on the trial established possession of the premises by actual residence thereon for seven successive years under a connected title in law, deducible of record from the United States, as provided by the Limitation Law of 1835.

The action was brought on the 7th day of April, 1873, against Henry H. Gilmore, who was in the possession of the land as tenant of the defendant, Judd.

It was conceded on the trial that both parties claimed title to the land under Joshua J. Moore, and that he had a connected title, deducible of record, from the United States, which he acquired by deed November 1, 1852.

The plaintiff, for the purpose of establishing title in himself, read in evidence a judgment rendered in the Circuit Court of the United States for the district of Illinois, on the 14th of July, 1854, against Moore, and in favor of Joseph C. Hoagland; also an execution issued upon the judgment September 1, 1854, upon which the premises were sold September 1, 1856; also a deed made by the marshal to Andrew Hoagland, dated June 28, 1858, based upon the judgment and sale.

A deed was then read in evidence from Andrew Hoagland to the plaintiff, bearing date July 14, 1870.

It is conceded that the evidence offered by the plaintiff established the fact that he acquired paramount title to the

premises under the judgment against Moore, and sale upon execution issued thereon.

The defendant, for the purpose of establishing a defense under the Limitation Law of 1835, read in evidence a judgment rendered in the circuit court of Fulton county, in favor of one Butts against Moore, on the 4th day of March, 1858, upon which execution duly issued, and on the 7th day of November, 1859, the land was sold. Subsequently judgments were obtained against Moore in favor of Goudy, Judd, Boyd, and James, under which redemption was made from the sale on the Butts judgment, and the land sold to the defendant, Judd, who obtained a sheriff's deed October 14, 1862.

This proof, in connection with the admission of title in Joshua J. Moore, deducible of record, was sufficient to establish the fact that the defendant, Judd, had a connected title in law, deducible of record, from the United States, as required by the act of 1835.

It appears from the evidence that on the 9th day of February, 1865, the defendant, Judd, sold his title to the land in controversy to Joshua J. Moore; that a written contract of sale was executed by the parties, by which Moore was to pay Judd a specified sum for the title, in one year. The agreement contained a provision making time of the essence of the contract, and giving Judd the right to terminate it at his option in case default was made by Moore in the performance of any of the conditions; and should a forfeiture occur, Moore was to surrender the possession of the land to Judd, and lose all payments made on the contract.

At the time this contract was made the land was inclosed, in cultivation, and a dwelling house thereon, occupied by a tenant of Moore. Moore remained in the possession of the land, by tenants, who resided thereon continuously until the month of February, 1871, when he died. Shortly after Moore's death Mr. Abbott, acting for and on behalf of Moore's estate, turned over the possession of the premises to Judd, who was in actual occupation of the premises by actual residence of his tenants, from that time until the suit was brought.

Upon the facts proven, the court, at the request of the defendant, gave to the jury an instruction, which read as follows:

" The jury are instructed that if they find and believe, from evidence, that before and on the 6th day of April, 1866, Joshua J. Moore, claiming and holding under a contract of purchase from the defendant, S. Corning Judd, had tenants actually residing upon the land in controversy. and he continued to occupy the land in the same way until his death, and that since his death such tenants actually resided thereon under the widow of Moore, held the possession until it was transferred to the defendant, and that the defendant has, since said transfer, and until the commencement of this suit, on the 7th day of April, 1873, had tenants actually residing thereon, and that such actual residence and possession by tenants has been continuous for the seven years preceding the commencement of this suit, then the jury will find that the defendant has occupied the land for seven successive years next preceding the commencement of the suit, by actual residence thereon, and find for the defendant."

If the propositions of law given to the jury in this instruction are correct, it necessarily follows that the verdict rendered in favor of the defendant was proper, as there was no substantial conflict in regard to the facts upon which the jury had to pass.

It is, however, urged that under the act of 1835, an actual residence by tenants is not sufficient, but, in order to obtain the benefit of the act, the defendant, who claims title deducible of record, must actually reside upon the premises himself for the full period of seven successive years.

The second section of the act declares that every real, possessory, ancestral or mixed action brought for the recovery of any lands of which any person may be possessed by actual residence thereon, having a connected title in law or equity, deducible of record from this State or the United States, shall be brought within seven years next after possession taken, as aforesaid.

It will be observed that the act does not, in terms, require the party in whom the title rests, in person to reside upon the land, but the party having title deducible of record must have possession, and as there are various methods of acquiring and holding possession of real estate, the act advanced one step, and required that the possession must be held in a particular manner, that is, by actual residence upon the land, not that the holder of the title should reside on the land himself, but that an actual residence should be established and continued for a given time.

The gist of the act is, that the possession must be indicated by an actual resident occupying under the title of record. If the holder of the title erects a house on the land and places a tenant therein, who resides on the land, it is difficult to conceive of any good or valid reason why the purpose of the law is not as well subserved as if the owner should actually reside upon the land in person.

It is, no doubt, true that actual residence on lands, is the best notice to adverse claimants that the land is being held and used by the occupant as his own; and if the intent of the framers of the act in requiring possession by actual residence, was, to require a possession which would afford the best notice to the holder of an adverse title, surely the actual residence by tenancy would answer the design of the law in this regard as well as if the holder of the title should reside thereon in person.

A familiar rule in the construction of statutes is, that where one State adopts a statute in force in another, which has been construed by the courts where the act was in force, the act is adopted with the construction given it by such courts.

The act of 1835 is a substantial copy of an act of the State of Kentucky, adopted in 1809. The only material difference between the two is, in the Kentucky act the words used are, actual settlement, where we use the words, actual residence.

But before the act was enacted here the courts of Kentucky, in construing the law, held that the word settlement meant

residence.   *Anderson* v. *Turner*, 3 A. K. Marshall, 134; *Bodley* v. *Coghill*, ibid. 615.

The language used, therefore, in our act, and that employed in the Kentucky act, was intended to express the same idea. It therefore becomes important to inquire whether a settlement on land by a party holding a title deducible of record, by tenants, would be sufficient in the State of Kentucky to avail of the provisions of the Limitation Law.

In *White* v. *Bates*, 7 J. J. Marshall, 542, the question arose, and it was said, "It is clear that H. White had not himself been seven years actually settled on any part of his seminary claim prior to the institution of the suits, and unless he can obtain the benefit of the settlement and residence of his tenant, and that to his own, he can not make out the length of time required by the statute.

" If White's tenant continued to reside on the land for seven years after title was acquired, and then the landlord came in immediately upon the removal of the tenant, we see no reason why he should not be permitted to avail himself of the protection which the statute would have afforded the tenant had he continued his possession, in the same manner that a vendee is allowed the benefit of the previous settlement and possession of his vendor.   The design of the statute equally requires the protection of the landlord who comes in after the tenant's time may have expired, and, therefore, interpretation of the statute according to its spirit requires that the settlement and possession of the tenant should inure to the benefit of the landlord, and be accounted his.   *   *   *   *   *   The actual occupancy of the land, by settlement of seven years, under a title deducible of record, constitutes the bar which the statute intended to provide; and whether there be one or more occupants during the seven years, is immaterial, provided they are connected with the same title, and hold under one another in succession, or for each other.   *   *   *   *   The case of *Skyle's Heirs* v. *King's Heirs*, 2 Marshall, 385, would seem to justify the idea that seven years' possession, without a settlement and residence on the land, would be sufficient.   Subsequent cases,

however, show that an actual settlement and residence are required."

This case seems to be directly in point, and, unless we ignore the construction given the act by the courts of Kentucky, which neither reason nor public policy demands, we must hold that possession by actual residence by tenants is a compliance with the spirit and intent of the act of 1835, and sufficient to constitute the bar provided by the act.

It is, however, claimed that the possession relied upon by Judd was not adverse, and, on that ground, the instruction was wrong.

It will be remembered that the contest in this case is not between the grantee of the purchaser under the judgment rendered in the Circuit Court of the United States and the defendant in execution, Moore, but it is between the former and the defendant, Judd, who claims under a junior judgment against Moore.

Had the action been against Moore, defendant in execution, and he had relied upon seven years' residence, whether he would be entitled to claim the benefit of the act, is a question not presented, and upon which it is not necessary to pass. It was, however, expressly decided in *Cook* v. *Norton*, 48 Ill. 20, that a purchaser from a judgment debtor, who has held title and possession for seven years, and paid all taxes, may set up his possession as an adverse possession, and claim the protec-tion of the limitation laws as against a title acquired by pur-chase at a sheriff's sale from a judgment debtor.

If Moore had conveyed to the defendant, Judd, under the rule announced in the case cited, it could not be successfully denied that Judd's possession would be adverse. A deed, however, from Moore to Judd was not required. It would have been a useless act, as Judd already had obtained all the title Moore possessed, by his purchase on execution issued on the judgment rendered against Moore. When, therefore, on the 14th of October, 1862, Judd obtained a sheriff's deed, he was, in effect, a grantee of Moore, and we perceive no reason

or principle that would prevent him from falling within the rule announced in *Cook* v. *Norton*, *supra*.

After Judd obtained his deed, had he taken possession of the land, and leased to Moore, and had Moore occupied the same as an actual residence for seven continuous years as tenant of Judd, such possession would have been adverse, and the bar provided by statute would have been complete.

The fact, however, that Judd sold to Moore, by contract, does not in the least affect or change the principle. The possession by residence of Moore, under the contract of purchase, inured to the benefit of Judd. It was, so far as the question here is involved, Judd's possession.

The language used by this court in *Hale* v. *Gladfelder*, 52 Ill. 91, where the vendor claimed the benefit of the possession of the vendee under a contract of sale, applies with peculiar force here. It is this: "The relation of vendor and purchaser is such that, when the latter enters into possession under the contract to purchase, the possession is that of the vendor. By the purchase, he recognizes the vendor's title, and, like a tenant, in all proceedings for the recovery of possession by the vendor, he is estopped from disputing his title. He enters and holds under the title of the vendor, and his occupancy is subservient and subordinate to that title, and, from this relation, and for the same reason, his possession becomes as fully that of the vendor as does that of a tenant become that of the landlord."

The record contains other evidence tending to prove the possession of Moore was hostile to the title of the plaintiff from the time his title was acquired; but disregarding this, we are clearly of opinion that the possession of Judd, after he sold to Moore, was adverse to the plaintiff, and if he saw fit to slumber upon his rights until Judd's possession under his title would ripen into a bar under the limitation laws of the State, he must abide the consequences resulting from his own acts.

It is claimed that there was a break in the possession of Judd after the death of Moore, and hence the possession was not continuous for seven years.

At the time of Moore's death, in February, 1871, his tenant was residing on the land, under him. The tenancy continued as before, the widow of Moore assuming the relation of landlord for a short time, until the possession was surrendered to Judd. It does not appear that the widow interposed any claim to the possession of the land, as widow or otherwise, in her own behalf. She merely assumed control of her husband's affairs, after his death, as is usually done in such cases. Under such circumstances, we see nothing that will operate to arrest the running of the Statute of Limitations.

After a careful examination of the whole record, we perceive no error in the giving or refusing of instructions. Upon the evidence before the jury, the verdict was proper. The judgment will therefore be affirmed.

*Judgment affirmed.*