(No. 12015.—Decree affirmed.)

ROBERT T. PEARCE, Appellee, vs. GEORGE C. WRIGHT
et al.—(CHARLES H. MOODY, Appellant.)

*Opinion filed June 20, 1918.*

1. PLATS—*fact that plat is not statutory does not affect title to lots conveyed according to plat.* A plat certified to by a licensed surveyor but not certified to by the county surveyor is not a statutory plat; but the fact that the plat does not conform to the requirements of the statute, so as to vest title in fee simple in the streets, does not affect the title to lots conveyed according to the plat.

2. LIMITATIONS—*adverse possession for statutory period is sufficient to establish title.* One entering into possession of land under a conveyance, even from a person having no title to convey, is presumed to enter according to the description in the conveyance, and his occupancy of part claiming the whole is construed as a possession of all not in the adverse possession of another, and is sufficient, if continued in himself or his successors without interruption for the statutory period, to maintain a bill in equity to quiet title.

3. SAME—*it is not material whether tenant's lease is verbal or written.* On the question of establishing title by adverse possession through a tenant it is not material whether the lease to the tenant is verbal or written.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

JOHN R. MCCABE, and ADOLPH L. BENNER, for appellant.

EVERETT M. SWAIN, and BERTRAM H. MONTGOMERY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This suit was begun by the appellee, Robert T. Pearce, by filing his bill in the superior court of Cook county against the appellant, Charles H. Moody, and others, alleging that he was the owner in fee simple and in actual possession of

that part of the north half of the northeast quarter lying south and west of the Calumet river and north and west of the South Chicago and Southern railroad, of section 6, township 36, range 15, embraced within the limits of and identical with purported lots 1, 2, 14 and 15 of block 11, and lots 6 and 12 to 16, both inclusive, of block 14, of the purported Phillips' subdivision of the northeast quarter of the northwest quarter and the north half of the northeast quarter, both lying south and west of the river, in section 6. He claimed title in fee simple by a chain of conveyances deducible of record from the United States, and also alleged that prior to October 1, 1891, the parties through whom he claimed title entered into the actual possession of the premises and constructed a continuous post-and-wire fence enclosing the land, and immediately thereafter leased the premises under a written lease to a tenant, who before May 1, 1892, entered thereon and continued to farm and cultivate the premises under said lease and under the claim of title in the appellee and his grantors, and continued to use the premises continuously until the filing of the bill on April 17, 1914, and he and those under whom he derived his title had been in the actual, adverse, hostile and uninterrupted possession of the premises continuously since the actual entry on September 1, 1891. The prayer was that the appellee's chain of title from the United States and the facts recited as to possession should be established and his title quieted. The appellant, Charles H. Moody, one of the defendants, answered, denying that the appellee acquired any title to lots 12 to 16, both inclusive, in block 14 of Phillips' subdivision, deducible of record from the United States or otherwise, or that he or those through whom he claimed title had been in possession or had any title or interest in them by possession or otherwise. He claimed title in himself to the lots by a deed of conveyance vesting title in Alexander Moody, a suit in partition in the superior court of Cook county between the heirs of Alexander

Moody, a purchase of the premises by him and a master's deed made and delivered to him. The issues were referred to a master in chancery, who took the evidence and reported that the appellee, at the time of filing his bill, was the owner in fee simple and in actual possession of the premises; that he derived title through a deed executed on March 10, 1870, by the Illinois Central Railroad Company to Ira Brown, a deed by Brown on October 21, 1886, to James W. Converse, a deed from Converse on July 29, 1902, to the Illinois Land and Loan Company, and a deed on March 13, 1912, from that company to the appellee. He made a further finding that prior to September 1, 1891, Converse entered into the premises and began to use the same for agricultural purposes through his tenant, Peter Mak, under an express verbal lease, and about September 15, 1891, constructed a continuous post-and-wire fence around the property, completely enclosing the same; that after enclosing the land he leased it under a written lease to Mak, who farmed and cultivated the land under his lease and continued to occupy the land under Converse and his grantees from the time of the first entry to the time of filing the bill, and that the appellant produced no evidence to support his claim of title and had never been in possession of the premises. He recommended a decree in accordance with the allegations of the bill and his findings. The chancellor heard the case on exceptions to the master's report, overruled the exceptions and entered a decree in accordance with the recommendations. From that decree this appeal was prosecuted.

One of the exceptions overruled was to the finding of the master that the appellee had title to lots 12 to 16, both inclusive, under the deed of Ira Brown to James W. Converse and the subsequent deeds, and as to that finding the conclusion of the master was wrong and the chancellor erred in overruling the exception. Brown had title to the premises and both parties claimed record title from him. On February 7, 1870, Brown made and acknowledged a plat of

Phillips' subdivision of the northeast quarter of the north-west quarter and the north half of the northeast quarter, both lying south and west of the river, in section 6, and the plat was filed for record on March 18, 1870, and re-corded. On September 6, 1870, Brown conveyed to Alex-ander Moody, by warranty deed, lots 12 to 16, both inclu-sive, in block 14 of the subdivision, and that title passed to Charles H. Moody on August 18, 1899, by a deed from the master in chancery in a partition suit in pursuance of a sale of the lots. Brown, after his conveyance by war-ranty deed to Alexander Moody, executed a quit-claim deed on October 21, 1886, to James W. Converse of the north-west quarter of the northwest quarter, the northeast quarter of the northwest quarter and the north half of the north-east quarter of section 6, which recited that the deed was given without recourse upon the grantor. That quit-claim deed, and the subsequent deeds through which the appellee claimed, conveyed no title to the lots because Brown had already parted with his title. The plat of Phillips' subdivi-sion was certified to by a licensed surveyor, but not being certified by a county surveyor was not a statutory plat. The master found and reported that the plat did not conform to the requirements of the statute so as to vest title in fee simple in the streets, but that fact has no relation to the question of title to the lots which were conveyed according to the plat.

Counsel for the appellee seem to regard it as important that the court should have their opinion that the subdivi-sion was one of a class made by cheap speculators of a "pre-market" nature, constituting a veritable blight upon the general growth and building up of the community and its general interest, and that the appellant rejected an offer of counsel to refund taxes paid, with interest; but whether the appellant belongs to a class who are absolute stumbling blocks to the progress of the city of Chicago does not af-fect the question whether he acquired the record title to

the lots. He bought and paid for the lots and got the title and paid taxes. If he has lost his title to one who had none it is through the Statute of Limitations.

The appellee also claimed title to the lots under the Statute of Limitations by actual, adverse, hostile and uninterrupted possession from the original entry in September, 1891, to the filing of his bill, and if he established title under the statute it could be used as a basis for a bill in equity to quiet his title. (*Bugner* v. *Chicago Title and Trust Co.* 280 Ill. 620.) On that question the master also found for the appellee and the court overruled an exception. The land adjoined the Calumet river on the south, and it was low, wet prairie land, interspersed with sloughs, and at times was all, or nearly all, under water. The evidence for the appellee was that Peter Mak went into the possession of the land in 1891 under a written lease from James W. Converse, which was renewed at different times from 1891 to 1915; that a three-wire fence, with posts, was put up in 1891; that Mak during all his tenancy made hay on the land, and plowed, planted and raised corn, potatoes, grain and vegetables on those portions which were available for that purpose; that the wire fence was not repaired or rebuilt until about four years before the hearing; that the wires became bent and nearly all the posts were down, but it remained in that condition where it was built and was repaired and new posts put in about 1911. Oral evidence was given of the making of the various leases and was objected to by appellant on the ground that sufficient search or inquiry had not been made for the leases to authorize the introduction of secondary evidence. The terms of the leases were not material, and it was immaterial, so far as the possession of Mak as a tenant was concerned, whether the leases were verbal or written, but it was satisfactorily established that the leases were misplaced or lost and could not be found, and there was no error in admitting the testimony. About June 1, 1899, the appellant and the three

284 — 15

commissioners in the partition suit went upon the premises, and they testified that the lands were then under water and they saw no indication of fences or fence posts and no signs of anyone being in possession of the premises; that no part of the land in the subdivision was in cultivation and no one was in possession of any part of the land, and they did not see any fence and did not believe any could be built upon such land. Other witnesses testified that they had been over the land or about it and saw no indication of any fence or of possession. That the land at times was practically all under water was not denied, but upon reading the evidence it appears that the fence was built enclosing the land although in the course of time it became greatly out of repair, and that there were portions of the land which Mak cultivated annually during his tenancy. His possession extended to all the lands described in the deed from Brown and subsequent conveyances. A party entering into possession of land under a conveyance, even from a party having no title to convey, is presumed to enter according to the description in the conveyance, and his occupancy of part claiming the whole is construed as a possession of all not in the adverse possession of another. (*Barger* v. *Hobbs,* 67 Ill. 592; *Fisher* v. *Bennehoff,* 121 id. 426; *Whitford* v. *Drexel,* 118 id. 600; *Burns* v. *Curran,* 275 id. 448; *Dempsey* v. *Burns,* 281 id. 644.) Neither Converse, whose deed was of record, nor his tenant, was a party to the partition suit and appellee was not bound or affected by it. It can not be said that the finding of the master on the question of possession was contrary to the evidence and the chancellor did not err in overruling the exception to the finding as to that fact. It was sufficient for the appellee to establish title under the Statute of Limitations.

The decree is affirmed.                         *Decree affirmed.*