(No. 25926.—

N. C. GOCHENOUR, Appellant, *vs.* NELLIE LOGSDON *et al.* Appellees.

*Opinion filed December 16, 1940.*

Robert G. Burnside, for appellant.

Murray & Miller, (Matthew E. Murray, of counsel,) for appellees.

Mr. Justice Murphy delivered the opinion of the court:

Appellant N. C. Gochenour began this suit in the circuit court of Fayette county to quiet the title to the southeast quarter ($\frac{1}{4}$) of the southeast quarter ($\frac{1}{4}$) of the southwest quarter ($\frac{1}{4}$) of section twenty-nine (29) township eight (8) located in said county. Nellie Logsdon, the widow of Joseph Edward Logsdon, and her six minor children, the heirs-at-law of said decedent, were made parties defendant. They interposed the defense of a limitation title and filed a counter-claim praying that the title be quieted in them. Nellie Logsdon had executed an oil and gas lease on her undivided one-third to E. P. Anderson and he joined

in the counter-claim. Defendant Gussie Grandfield defended against appellant's complaint and the Logsdon counter-claim by claiming a limitation title. He also filed a counter-claim seeking to establish the title in him. The Carter Oil and Gas Company, holders of an oil and gas lease from Grandfield, answered the complaint and counter-claim and supported Grandfield's claim of title. After a hearing before the court appellant's complaint and Grandfield's counter-claim were dismissed for want of equity. The title was decreed vested as follows: An undivided one-third to Nellie Logsdon, subject to the Anderson oil and gas lease, and the other undivided two-thirds to the six minor defendants, the heirs-at-law of Joseph Edward Logsdon, each of said children taking an undivided one-ninth.

Appellant perfected an appeal to this court. Grandfield filed a notice of cross-appeal but has not submitted any briefs and therefore his interest and those of his lessee, the Carter Oil Company, are settled and determined by the decree of the trial court.

The pertinent conveyances in appellant's chain of title are as follows: In 1884, B. F. Johnson and P. M. Johnson acquired title to the tract in question holding in a connected chain from the government. July 8, 1912, P. M. Johnson and wife, and the executors of the will of Benjamin F. Johnson, deceased, conveyed by quitclaim deed to appellant. These deeds were filed for record September 20, 1912. The evidence shows that neither the Johnsons nor appellant paid any taxes on the land from 1900 to January 1, 1940, except that March 18, 1939, appellant paid the taxes due for the current year. Such payment was made subsequent to the institution of this suit. Appellant did not enter into possession under his deed until August, 1938, a few days prior to the beginning of this suit.

Appellees' defenses and counter-claims are based on limitation titles claimed under sections 1, 6 and 7 of the Limitation act. (Ill. Rev. Stat. 1939, chap. 83, pars. 1, 6, 7.)

They also pleaded *laches* in bar of appellant's claim. In this court appellees abandon any claim of a limitation title by twenty years' adverse possession under section 1. The view taken in reference to the limitation title claimed under section 6 makes it unnecessary to consider appellees' claim of a limitation title under section 7 or the defense of *laches*.

The chain of title in which appellees claim, begins with a tax deed issued to A. H. Bachman in 1899. It was issued upon an admittedly defective affidavit. In 1912, William Ireland, by connected chain, became the holder of the Bachman title. His deed was filed for record January 30, 1913. The conveyance to Ireland was by a general statutory form of warranty deed. It was a deed between parties competent to make and receive it and in apt terms purported to convey the land in question by definite description. It constituted color of title. (*Bolden* v. *Sherman*, 110 Ill. 418; *Foster* v. *Letz*, 86 id. 412; *Timmons*, v. *Kidwell*, 138 id. 13.) Ireland's grantor, Sarah W. Cohron, became a holder in the chain of title under the Bachman deed in 1900. Ireland testified he purchased her interest. The consideration as appears in the deed was $30. There is nothing on the face of Ireland's deed or in his purchase that tends in any way to impugn his good faith in the transaction. The rule is that the good faith required by section 6 in the creation or acquisition of color of title is a freedom from design to defraud the person having the better title and the presumption that it was acquired in good faith will prevail until it is overcome by evidence of fraud or actual bad faith. (*Keeney* v. *Glos*, 258 Ill. 555; *Duck Island Club* v. *Bexstead*, 174 id. 435.) Ireland's deed constituted color of title and under the evidence must be held to have been acquired in good faith.

Before a title amounting only to color of title obtained in good faith can ripen into a conclusive title under section 6 of the Statute of Limitations, it is incumbent upon the one asserting such title to prove that following the

acquisition of the color of title there was actual possession and payment of taxes by or on behalf of the party holding such title for seven successive years. (*Wright* v. *Stice*, 173 Ill. 571.) The color of title, possession and payment of taxes must exist concurrently without interruption and must continue throughout the same seven years. *Taylor* v. *Lawrence*, 148 Ill. 388; *Timmons* v. *Kidwell, supra.*

Prior to 1912, the premises were vacant and unoccupied. It was broken timber land without fences or improvements of any kind. Ireland testified that soon after he acquired his deed in 1912, he cut timber from the land and had it made into ties which he sold. Subsequently he contracted to sell it to Hi Badman on time payments. The only evidence of the terms of the contract is in the verbal testimony of Ireland. The date of the contract or the period in which payment was to be made is not shown by the evidence but it is clear Badman went into possession with Ireland's consent under the contract of sale. Badman erected a log house, barn, chickenhouse and cut the timber and brush from two or three small patches and cultivated them. Ireland's testimony is that the contract was made with Badman soon after he acquired his deed and that Badman's possession followed immediately after making of the contract. John Tucker, a witness who lived near the land and had known it since 1914, testified Badman erected the house in 1914 or 1915. Badman did not pay the contract price and M. E. Sides obtained his interest, completed the payments to Ireland and acquired a deed from him September 6, 1918. The exact date Mrs. Sides entered into the possession of the property is not shown, further than that she stated she entered into possession in 1918. She is corroborated on the date of entry by the testimony of Ireland who testified she entered when Badman left. John Tucker also testified as to her occupancy in 1918. February 12, 1920, she conveyed the property to her son John Sides and removed from the premises. February 12, 1922, John Sides and wife con-

veyed to Joseph Edward Logsdon, under whom appellees claim. It does not appear John Sides ever resided upon the premises during his ownership but George Dial, an uncle of Sides, occupied it as a residence for one year following John Sides' acquisition of the property. After his removal Charles Sides, a brother of John, occupied it as a home in 1921 for a couple of months with the consent of his brother John. After Joseph Edward Logsdon acquired the title in February, 1922, his brother Elmer Logsdon moved into the house and occupied the premises with his consent. Elmer Logsdon testified that he resided there "something like a year." The grantee, Joseph Edward Logsdon and family took up a residence in the property in November, 1925, and continued to reside there until July, 1926.

It appears that these premises were practically unproductive, there being only two or three small patches that were suitable for cultivation. It was unfenced and not suitable for grazing. There was no well or other means of obtaining water for family use on the land. Water had to be carried a quarter of a mile for family purposes. The buildings were of primitive structure, lacking in comfort and conveniences.

The possession contemplated by section 6 of the Limitation act is an open, notorious, adverse, actual, visible and exclusive possession. (*Wright* v. *Stice, supra; McMahill* v. *Torrence,* 163 Ill. 277; *Ball* v. *Palmer,* 81 id. 370.) It must be hostile in its inception and so continue. (*Alsup* v. *Stewart,* 194 Ill. 595; *Whiting* v. *Nicoll,* 46 id. 230.) Conceding, but not deciding, that Ireland's actions in cutting and removing the timber were not such acts of ownership as to constitute actual adverse possession, Badman's occupancy did meet such requirements. The 'actual possession' required by section 6 need not be by the owner of the color of title in person but such possession may be by one in possession under a contract to purchase, (*Martin* v. *Judd,* 81 Ill. 488; *Riggs* v. *Girard,* 133 id. 619;) and it is

immaterial whether the contract was verbal or written. (*Pearce* v. *Wright,* 284 Ill. 221.) The contention that Badman's possession did not begin until March, 1916, the date of the first payment of taxes, can not be sustained in view of the uncontradicted evidence of Ireland that the contract with Badman was made soon after he acquired the property in 1912; that Badman went into possession immediately after the completion of the contract, and the testimony of John Tucker that the house was erected in 1914 or 1915.

Badman's possession having started not later than the end of the year 1915, the seven successive years necessary to complete title ended at the end of the year 1922. The actual possession necessary under the statute must be determined in view of the circumstances and conditions of the property and the use made of it. In *Burns* v. *Curran,* 282 Ill. 476, in considering the possession of lands subject to overflow by high water, it was said: "Neither actual occupancy, cultivation or residence is necessary to constitute actual possession of land. Where property is so situated as not to admit of permanent useful improvements, the continued claim of the party, evidenced by public acts of ownership such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim, may constitute actual possession." The possession of the successive grantees holding in the chain of title under the Ireland deed and those holding through and under such grantees constitute continuous occupancy for seven successive years.

The evidence introduced to show payment of taxes for a period of seven successive years consisted in part of the oral testimony of persons who held the title for part of said period and the records of the county clerk's office showing the fact of payment and by whom made. The statute does not provide any particular method of proving payment of taxes. Under the seven-year statute it leaves

the proof to be made in any legitimate mode. The evidence offered on the question should be clear, positive and free from suspicion in order to satisfactorily show that the taxes have been paid. (*Meyer* v. *Jopson*, 3 19 Ill. 601.) From the evidence presented, it appears that Ireland paid the taxes for the years 1913, 1914, and 1915 The taxes for the years 1916, 1917, and 1918, were paid by James Badman. Mrs. Sides paid for the year 1919; John Sides for the years 1920 and 1921, and Joseph Logsdon for the year 1922. From this it appears that taxes were paid by those holding the color of title under the successive conveyances from Ireland's deed excepting for the years 1916, 1917, and 1918, which were paid by James Badman. The evidence of Ireland is that he contracted the sale of the property to Hi Badman and that he, together with his son James Badman and other members of the family, resided upon the premises. In *Cofield* v. *Furry*, 19 Ill. 183, in considering by whom the taxes should be paid, the court said: "The true question in such case is, under what title were the taxes paid? If they were paid under no claim and color, or under title adverse to that to which they are sought to be applied, the payment is unavailing. But if paid by the tenant, his payment, like his possession, is in legal effect, the act of the landlord." In *Kuhn* v. *Glos*, 257 Ill. 289, in following *Cofield* v. *Furry, supra,* it was said: "It is sufficient if the taxes are paid under claim and color by those having or succeeding to the possession." Under these authorities the payment by a member of the family of Hi Badman who was in possession under the contract of purchase made between him and Ireland is sufficient to establish payment for those years under the color of title held by Ireland.

Appellees established a limitation title in them, and the court did not err in dismissing appellant's complaint for want of equity and decreeing the title to be vested in appellees. *Decree affirmed.*