# CHARLESTON.

PARKER'S ADM'R v. CLARKSON et al.

Submitted February 6, 1894.—Decided March 28, 1894.

1. LIMITATIONS OF ACTIONS—REMOVAL OF CAUSES.

Where a cause is removed from the state court to the United States District Court, and after years of litigation in said United States Court an appeal is taken to the Supreme Court of the United States, and it is there held, that the cause was improperly removed and that the United States court had no jurisdiction of the cause, no valid proceeding could have been taken in said state court during the pendency of said cause in the United States court.

2. LIMITATIONS OF ACTIONS—REMOVAL OF CAUSES.

Where such removal is ordered upon the petition of the defendant, and the cause remains in the United States court for seventeen years, during which time active litigation is carried on between the parties, and then the cause is remanded to the state court for want of jurisdiction, the defendant can not under the plea of laches take advantage of the delay thus occasioned to dismiss the plaintiff's cause.

3. LIMITATIONS OF ACTIONS—POSSESSION—ADVERSARY POSSESSION.

In a suit to enforce a judgment-lien against the real estate of the judgment-debtor a pendente lite purchaser from such debtor does not hold adversely to the party seeking to enforce such a lien, and such purchaser will not be protected by the statute of limitations, by reason of open, exclusive, and notorious possession for the prescribed period, paying taxes, etc., as such possession will not be considered adverse to the plaintiff.

D. C. GALLAHER, FLOURNOY & PRICE, and BROWN, JACKSON & KNIGHT for appellant cited 6 Otto 704; Code, c. 139, s. 11; Id. c. 136, s. 4; 37 W. Va. 481; 25 W. Va. 751; 34 W. Va. 603; 2 Dam. Ch'y Pr. 857; 6 Gratt. 107; 1 Rev. Code, c. 128, s. 38; 28 W. Va. 601, 607; 27 W. Va. 511, 527; 28 W. Va. 322; 12 Pet. 164; 20 How. 541; 52 Miss. 457; 108 U. S. 292; 7 Rob. Pr. (App.) 1087; Dest. Rem. Cas. § 110 and n.; Dill. Rem. Caus. § 87.

T. B. SWANN for appellees cited 17 How. 144; Sto. Eq. Pl. § 354; 5 Leigh 172–178; 17 Gratt. 96; 95 U. S. 200; 1 H. 161; 99 U. S. 201; 23 Gratt. 223; 7 Gratt. 112; 7

Leigh 487; 106 U. S. 391; 26 W. Va. 710; 25 W. Va. 108; 4 Leigh 341; 27 W. Va. 520; Id. 250; Sto. Eq. Pl. 364–390; 12 Pet. 164; 37 W. Va. 222–225; 22 W. Va. 180; 24 W. Va. 239, 244; 37 W. Va. 210–225; 27 W. Va. 225.

J. S. SWANN for appellees cited 1 Johns. Ch'y 405: 1 Paige 35; 14 Pick. 374; 118 Mass. 360; 226 Gratt. 706; 18 Ver. 384; 56 N. H. 105; Code, c. 129, s. 3; 3 Bland Ch'y Mod. Rep. 351, 600; 1 Edw. Ch'y (N. Y.) 46; Sto. Pl. § 364, 378, 379, 387; 2 Paige 360; 23 Gratt. 222; 21 W. Va. 469; 9 Pet. 416; 2 Ves. Jr. 11; 17 Wall. 78; 94 U. S. 806; 2 Sch. & Lef. 607; Sto. Eq. Pl. § 410; 10 Wheat. 146; 1 How. 189, 161; 99 U. S. 201; 2 Watts & S. 255; Sto. Eq. Jur. § 1520; 42 Am. Dec. 753; Bar. Ch'y Pr. 90, 118; 1 Bar. Ch'y Pl. 110; 5 Leigh 164; 22 Am. Rep. 320; 1 C. E. Green 251; 14 Am. Dec. 774, 777, 778 and notes; 6 Pet. 61.

G. S. COUCH for appellees, Youngs, cited 31 W. Va. 540; 24 W. Va. 185; Dam. Ch'y Pr. 1701; 21 W. Va. 470; 28 28 W. Va. 604; 2 Pom. Eq. § 634, 640; 14 Am. Dec. 777 and n.; Free. Judgm'ts 202; 1 Metc. (K'y) 146; 5 Leigh. 627; 2 Rand. 93.

ENGLISH, JUDGE.

In the month of December, 1865, Milton Parker filed his bill in the Circuit Court of Kanawha county against John N. Clarkson and others for the purpose of subjecting the real estate, to which said Clarkson was entitled in said county, to the satisfaction of four judgments, which said Parker had obtained against said Clarkson—one in 1851, another in 1852, and two of them in the spring of 1857— which judgments had been docketed and kept in life by executions issued in proper time. A general decree of reference was made in the cause on the 10th day of April, 1866, requiring a commissioner to report what real estate said John N. Clarkson owned at the time of the plaintiff's earliest judgment, and what disposition was made of it after that time, and what liens there were upon said real estate with their priorities. A report was made by A. T. Laidley in pursuance of this decree on the 18th day of Feb-

ruary, 1870, which report was recommitted to him on the 21st day of June, 1870, which second report was returned on the 29th day of November, 1870. The cause was again referred to Commissioner Laidley at the April term, 1871, with certain instructions; but the decree was not complied with, for the reason that on the petition of C. G. Hussey & Co., and John Johns, assignees in bankruptcy of said Clarkson, filed on the 8th day of July, 1871, an order was entered in said Circuit Court removing said cause to the District Court of the United States for the district of West Virginia. On the 2d day of April, 1872, it appearing to the court that no bond had been filed by petitioners at the time said first order of removal was entered, proper bond having been filed, it was again ordered that said cause be removed to said United States District Court, according to the prayer of said petitioners. The cause remained in the United States District Court for about seventeen years, during which time the questions raised by the pleadings were actively litigated by the parties in interest.

The questions as to the liens against the real estate, in which the defendant Clarkson was interested, their validity and priority, were referred to and reported upon by successive commissioners. The liens were ascertained against the real estate owned by John N. Clarkson, and not aliened, known as the "Early Farm," and said farm was sold under a decree rendered in said United States District Court, and the proceeds paid out partly in costs and attorney's fees, and partly upon the liens ascertained against the same in said United States Court. The liens resting upon a lot in the city of Charleston containing one and three fourths acres, which was conveyed to John N. Clarkson by Van B. Donnally and wife, were also ascertained, and said lot was also decreed to be sold to pay said liens.

An appeal was taken to the Supreme Court of the United States from said last-mentioned decree by the heirs of John D. Young and by Thomas B. Swann and John N. Clarkson. A decree was entered in said Supreme Court reviving the cause in the name of L. H. Ewart, administrator *de bonis non* of Milton Parker, as complainant; and, that court being of opinion that this cause was not prop-

erly removed from the Circuit Court of Kanawha county, the said decree remitted the cause to the said United States District Court, with directions to remand it to the state court (10 Sup. Ct. 75) and it was so remanded on the 22d day of February, 1890; and on the 10th day of April, 1890, a decree was entered in the Circuit court of Kanawha county ordering said cause to be redocketed therein, and proceeded with under the laws governing such cases; and the same was duly revived and ordered to proceed in the name of appellant, L. H. Ewart, administrator *de bonis non* of Milton Parker, deceased.

On the 23rd day of April, 1892, the appellant filed an amended and supplemental bill, setting forth the proceedings had in said cause in the Circuit Court of Kanawha county, and also the proceedings had in the United States District Court, suggesting the death of John D. Young, and praying that his heirs at law might be made parties defendant, and that the liens of the judgment of the said Milton Parker might be enforced against the one and three fourths acres of land, and that the same might be sold to pay the said judgments.

The connection of said John D. Young with the case originated, as appears from the allegations of the original bill filed in the Circuit Court of Kanawha county, as follows: On the 5th day of November, 1857, John N. Clarkson conveyed said one and three fourths acre of land, which had been conveyed to him by Van B. Donnally and wife, to Thomas B. Swann, and said Swann afterwards conveyed the same property to Ezekiel Mayes, and Ezekiel Mayes afterwards conveyed the same property to John D. Young.

Upon the filing of said amended bill the cause was remanded to rules, and process awarded and served upon the defendants. On the 28th day of December, 1892, the death of M. W. Young was suggested, and the cause duly revived against his widow and heirs at law. On the 28th of April, 1893, J. M. Laidley and Francis Thompson's administrator filed their answers, and the demurrers of the defendants to said amended bill were set down for argument, and on the 29th day of June, 1893, the widow and

heirs of M. W. Young and others, heirs at law of John D. Young, filed a special plea to said amended bill, to which complainant demurred, which demurrer was overruled; and the court also sustained the demurrer of the heirs of John D. Young to said amended bill, but granted the plaintiff leave to amend the same at bar, which was accordingly done. A second demurrer was interposed by the said defendants, and was sustained by the court, and thereupon the said second amended bill and amended bill were dismissed, with costs, and from this decree this appeal was taken.

This special plea filed by the widow and heirs of M. W. Young and others, the demurrer to which was overruled as above stated, claimed, that the complainant ought not to have and maintain his bill of revivor filed against them, because they say that they, nor either of them, do not claim or hold said one and three fourths acres of land set out in the original bill filed in this cause, lying on Virginia street, Charleston, as heirs at law of J. D. Young, but as alienees, holding same by deed of record prior to the time of filing said bill of revivor, which deeds are filed as part of said plea; that under the above state of facts said defendants are advised and charge that the plaintiff can not maintain against them or either of them as heirs at law of John D. Young his bill of revivor, but must file an original bill or supplemental bill setting ont the above facts and putting them in issue, so that the court may pass upon them, and determine the rights of all the parties under the facts as they are now made plain to the court;—that J. D. Young died April 2, 1870, and E. W. Mayes died in April, 1872, and prior to the 23rd day of said month; and that no order had been made in the cause in this court from July, 1871, until the filing of said bill of revivor on the 23rd of April, 1892; and that complainant had long since abandoned all right and claim to subject said one and three fourths acres of land to the liens now set up in said bill of revivor;—and that defendants had been severally and continuously in possession of said one and three fourths acres of land exclusively, openly, and notoriously holding and claiming same as their own property, and

since said deeds were made, each, according to the rights and interests secured in said several deeds, paying the taxes thereon all the time from the dates of said several deeds; whereupon they prayed the judgment of the court upon their rights in the premises as set forth in said plea, and they asked that said bill of revivor be dismissed as to these defendants, and they relied upon the latches of complainant and those in interest with him, and upon the statute of limitations in the premises, and prayed thereon the judgment of the court.

In considering the questions raised by the first assignment of error, which is claimed to consist in the action of the Circuit Court in overruling the demurrer to said special plea filed by M. W. Young's heirs and others, I will call attention first to the fact, that the defendants themselves filed the petition and gave the requisite bond, which caused the removal of said cause from the state court, in which it was pending, to the United States court. John D. Young was a party to the suit in the Circuit Court, and had been served with process, and, after the general decree of reference of April, 1866, had been entered, and the commissioner had proceeded to execute the same, the said John D. Young and wife by deed May 20, 1868, conveyed to his son, Milton W. Young, a portion of said lot of one acre and three quarters. This fact is alleged in the plaintiff's second amended bill admitted by the demurrer thereto; and it also appears in amended bill and in the same manner, that after the death of said John D. Young during the pendency of said suit in the United States Court in 1873 and 1874 the heirs at law of said Young made conveyances of their interests in the said lot to each other of different portions of the same. When the judgments of Milton Parker were obtained and docketed, John N. Clarkson was the owner of the one and three fourths acres of land. Subsequently, to wit, on the 21st of July, 1858, he conveyed the said lot to T. B. Swann. Swann conveyed the same to Ezekiel Mayes in January, 1860, and Mayes conveyed it on the 10th day of June, 1864. Said Parker bought this suit in December, 1865, and said Swann, Mayes and J. D. Young were made parties, and a general decree of reference was made in the cause on the 10th day of April, 1866.

Upon the question as to lapse of time and the statute of limitations raised by said special plea this Court has held in the case of *Camden's Adm'r* v. *Hays*, 37 W. Va. 475 (16 S. E. Rep. 561) : "In a creditor's suit, where the object and purpose are to ascertain all the liens upon the debtor's real estate and their priorities, and to provide for their payment, the statute of limitations will, in general, cease to run against such liens after the entry of an order of reference."

It is, however, contended that the death of John D. Young in 1870, the said lot thereupon descending to his heirs at law, and the failure to suggest his death, and to revive the suit against his heirs or his vendee, M. W. Young, for a number of years, cause the statute of limitations to run in their favor. In considering this question, however, it must be borne in mind that John D. Young was in life when said suit was brought, and was made a party defendant, and was such defendant on the 20th day of May, 1868, when he conveyed to Milton W. Young a portion of said one and three fourths acres of land fronting fifty three feet and eight inches on Virginia street, and the said Milton W. Young must be regarded and considered as a *pendente lite* purchaser; and as to the rights of such a purchaser this Court held in the case of *Lynch* v. *Andrews*, 25 W. Va. 751 : "I. *Pendente lite* purchasers are bound by the decrees entered affecting the property so purchased by them although they may not be parties to the suit." "The statute of limitations does not run in favor of a *pendente lite* purchaser. Such person in possession of land so purchased, will not be regarded as holding it adverse to the parties to the suit during the litigation."

SNYDER, J., in that case, in delivering the opinion of the Court, said on p. 759 : "It is undoubtedly true that where a purchaser is in the actual possession of land under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all the world, including his vendor, from whom his title and possession are derived. *Core* v. *Faupell*, 24 W. Va. 238. But, while this is sound law, it is also well settled that the limitations has no operation upon the subject of litigation. It ceases to run at the time the litigation commences, if it

has already commenced; and, if the cause of action arises during the pendency of the litigation, the statute does not commence to run until litigation has ended. The cause of action, if the appellees ever had any, in the case at bar commenced during the pendency of the litigation over the land in controversy, and that litigation is still pending. The adverse possession of the appellees, therefore is wholly ineffectual as against the rights of the appellant. They, as we have seen stand in the same relation to the land in controversy as does their vendor, James Lynch. They are his vendees, privies in estate, holding and claiming as *pendente lite* purchasers; and as such they are as much bound by the proceedings in the suit as their vendor. They can, of course, claim no protection from the statute of limitations or adverse possession that he could not claim, and he, being a party to the suit, has no such claim whatever."

Applying the principles announced in this case to the one under consideration, M. W. Young could no more be protected by the statute of limitations than could John N. Clarkson or John D. Young, who were parties to the suit. When Milton Parker obtained his judgment against John N. Clarkson, he thereby acquired no right to the possession of the one and three fourths acre tract of land. He acquired a lien upon the land while the possession remained with Clarkson, or those to whom it might be successively conveyed. The liens of the plaintiff's judgments after they were docketed were unaffected by subsequent conveyances. Where the title went, the liens followed and continued in force and life, as long as the judgments were kept alive against Clarkson. This question is discussed, and the law clearly stated in the case of *Pratt* v. *Pratt*, 96 U. S. 704, and the conclusions reached are embodied in the syllabus of the case, which reads as follows :

"(1) The statute of limitations applicable to the action of ejectment has no relation to the lien of a judgment-creditor on the lands, though the judgment-debtor may sell and convey them with possession to the party setting up the statute."

"(2) That statute does not begin to run in such case until the lands have been sold under an execution sued on

the judgment, and the purchaser of them becomes entitled to a deed [this case was taken up on error from the Circuit Court of the United States for the northern district of Illinois] because until then there is no right of entry or action against the party so in possession."

"(3) That statute begins to run against the judgment-creditor only when he is such purchaser, and can bring ejectment."

Applying these principles to the mode of procedure in enforcing a judgment-lien in this state, we would say that the statute did not begin to run until a sale had been directed and made in pursuance of a proper decree, and the party entitled to the lien had become the purchaser and obtained his deed. Until such sale is made, and the party entitled to the lien becomes the purchaser and acquires his deed, the party in possession holds in privity with the lienor and not adversely to him.

It is further claimed that the Circuit Court should not have overruled the demurrer to the plea filed by the widow and heirs of M. W. Young and others, because it is averred in said plea that J. D. Young died in April, 1870, and E. W. Mayes, in April, 1872, and prior to the 23d day of said month, and that no order had been made in said cause in said court from July, 1871, until the filing of said bill of revivor, on the 23d day of April, 1892; and that complainant had long since abandoned all right and claim to subject said one and three fourths acres of land to the liens now set up in said bill; and said defendants had been severally and continuously in possession of said one and three fourths acres of land exclusively, openly, and notoriously holding and claiming same as their own property, paying the taxes thereon, *etc.*

As to the portion of the plea which refers to the possession, we have already shown that it could not be considered adverse to the plaintiffs; and now, as to the question raised by the plea in regard to lapse of time intervening between the date of the last order in the Circuit Court and the filing of the amended bill after the case was remanded from the United States court, it may be proper just here to inquire, who caused this delay? Surely not the plaintiffs. They

were proceeding to enforce their judgment liens in the state court.   The cause had been referred to a commissioner, to ascertain what real estate the defendant owned, and the liens against the same, and their priorities.   These matters were pending before the commissioner when the cause was removed to the United States court on the petition of the defendants, and, after litigating the questions raised by the pleading in that court for nearly seventeen years, these same defendants took the case by appeal to the Supreme Court of the United States, and there succeeded in ascertaining that they had been instrumental in removing the cause to a court which had no jurisdiction, and in obtaining an order remanding the case to the Circuit Court of Kanawha county.   When these facts are considered they do not place the defendants in a favorable attitude to criticise the plaintiffs on account of the delays, which have occurred in the cause, or to ask the dismissal of the same on account of laches.

As to the time when a bill of revivor may be filed, our statute (Code, p. 781, c. 125, s. 12) provides : "The plaintiff may also at any time before or after the appearance of the defendant, in the vacation of the court wherein the suit is pending, file in the clerk's office, with the other papers in the cause, an amended declaration or bill, supplemental bill, or bill of revivor; whereupon the clerk shall issue a summons against the defendant," *etc.*

It appears that John D. Young died in 1870.   On the 8th of July, 1871, the first order removing said cause to the United States court was entered.   On the 10th day of April, 1890, the order of the United States District Court was presented, which remanded the case to the state court, and ordered it to be filed, and the cause was ordered to be redocketed and proceeded with under the law governing such cases, and the case was ordered to be revived in the name of appellant as administrator *d. b. n.* of M. Parker, deceased, and the amended bill was filed April 23, 1892.

Now, as to the delay occasioned by the improper and illegal removal of the case to a court that had no jurisdiction, the plaintiff was in no manner responsible therefor.   It was done on the motion and petition of the defendants, and they can not be heard to complain of the delay occasioned

thereby. Neither can we see that said defendants are in any manner prejudiced by the fact that they are not brought before the court by the amended and supplemental bill for two years after the cause was redocketed in the state court, and for these reasons we think the demurrer to the special plea filed by the widow and heirs of M. W. Young and others should have been sustained.

Did the Circuit Court err in sustaining the demurrer to first and second amended bills? A question is made in the argument as to the want of certain parties to the amended and supplemental bill. They were, however, made parties to the original bill and are before the court; and the allegations of said bill and amended bill are asked to be considered as part of the second amended bill, and for these reasons we do not think the demurrer should have been sustained on that ground. Several of the questions raised by these demurrers have already been discussed in considering the demurrer to said special plea, and the question we will next consider is the question of laches. As between the plaintiff Milton Parker, and the defendant John N. Clarkson, it appears that the plaintiff's judgments were in life, and valid and subsisting liens upon the real estate of said Clarkson, at the time the original bill was filed, and the plaintiff was proceeding regularly to ascertain the real estate to which his judgment-debtor was entitled, the liens against the same, and their priorities.

It is contended, however, in argument that the commissioners' report was not filed. The reply to this, however, is that it might have been, but for the action of the defendants in obtaining the removal of the cause. During the pendency of the case in the United States court—a court which appears to have had no jurisdiction of the case—the delay was occasioned by the action of the defendants; and, after the said defendants have fought the case for years in a forum which they themselves had selected, and after they had been defeated in that forum, they appealed to the Supreme Court of the United States, and find that they have suffered defeat in a forum which had no jurisdiction; and when they are remanded to the state court, can they be heard to say: "It is true, our mistake has delayed this case

for all these years, but now we will take the benefit of the delay by pleading that the plaintiff has been guilty of laches?" We do not think this plea can be allowed to prevail in a court of equity.

While this case was pending in the United States court all proceedings in the state court were as much suspended as if they had been restrained by injunction, and it would be inequitable and unjust that the statute of limitations should run in favor of the party who caused the delay, or that laches should be allowed to prevail as a plea. In the case of *Hutsonpiller's Adm'r* v. *Stover's Adm'r*, 12 Gratt. 579, it was held: "Upon a *scire facias* to revive a judgment which had been suspended by an injunction for forty six years issue was made upon the plea of payment, and upon the trial the court instructed the jury that the pendency of said injunction cause repelled the legal presumption of payment which would have arisen from lapse of time if said injunction had not been pending. Held, the instruction was proper; and it was not necessary to distinguish to the jury between the legal presumption and the natural presumption arising from the lapse of time."

In the case of *Buster* v. *Holland*, 27 W. Va. 511, it was held: "A failure for fourteen years to make any entry of a cause at all, or to make any entry but a continuance, is no discontinuance of a cause if the court has made no order dismissing the cause for want of prosecution, as provided by section 8 of chapter 127 of the Code."

By reference to Desty on Removal of Causes to Federal Courts, we find the law stated as follows in section 18c: "Proceedings had in the state court are not vacated by the removal. The removal takes the case in the condition in which it was when the state court was deprived of its jurisdiction;" citing *Fisk* v. *Railroad Co.*, 6 Blatchf. 363, Fed. Cas. No. 4827, where it is held: "Where a suit is removed into this court under the act of July 27, 1868, as respects all the parties to it and all the subject-matter involved in it, all further proceedings in it in the state court are void; and, although the state court may be proceeding further in it, at the instance of a party to it, it is not necessary to the exercise of the jurisdiction of this Court that it should make

an order staying all proceedings in the suit by such party in the state court, and therefore such order will not be made. This court will not stay proceedings in a state court which are null and void."

Desty also says in section 17f: "On the order of the Circuit Court remanding a cause the jurisdiction of the state court *ipso facto* re-attaches;" citing *Thacher* v. *Mc-Williams*, 47 Ga. 306; *Ex parte State Ins. Co.*, 50 Ala. 464; *Insurance Co.* v. *Francis*, 52 Miss, 457.

Under these rulings, then, there could have been no laches in the prosecution of the case in the state court during its pendency in the United States court, as anything done in the state court during such pendency would have been a nullity. By the action of the defendants, then, in this case, presenting their petition, making the proper affidavit, and giving the required bond, they put a period to the proceeding in the state court, and restrained any further procedure more effectually than if an injunction had been obtained for that purpose, and the delays occasioned thereby can not avail as a plea in behalf of the defendants.

For these reasons our conclusion is that the Circuit Court erred in sustaining the defendants' demurrer and dismissing the plaintiff's bills. The decree complained of is reversed, and the cause remanded.