HENRY LEMKER, JR., Appellee, v. UNKNOWN CLAIMANTS et al., Appellants.

**ADVERSE POSSESSION:** Knowledge of Hostile Claims — Effect.
The running of the statute of limitation in favor of one who is in good faith in the open and adverse possession of real estate under color of title is manifestly not interrupted by the fact that the possessor knows that other parties are asserting an interest in the property, or that other parties actually had an interest which they might successfully assert, but did not. (See Book of Anno., Vol. 1, Sec. 11007, Anno. 507 *et seq.*)

Headnote 1: 2 C. J. pp. 169, 202.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

APRIL 6, 1926.

SUIT in equity, to quiet the plaintiff's title to a farm of 200 acres. The defendants named in the petition are very many. The defendants personally served all join in a common answer, consisting of a general denial and of a claim of title to the said farm, as heirs at law of one Frederick Janson. At the close of the evidence, the defendants filed also a cross-petition, which contained no new averment of fact, but prayed that the title of the defendants be quieted. There was a decree for the plaintiff, and the defendants appeal.—*Affirmed.*

*Ray P. Scott* and *E. N. Farber,* for appellants.

*F. E. Northup* and *R. E. Johnson,* for appellee.

EVANS, J.—The plaintiff traces his title herein to Anton Janson, who conveyed the land on December 8, 1892, to Joseph H. Welp. The chain of title disclosed by plaintiff is complete, and encounters no conflicting conveyances. Looking to the answer of the defendants for the basis of their claim of title, we find no support for it in the record. Frederick Janson was the father of Anton Janson. He died in Grant County, Wisconsin, some years prior to December 8, 1892. He had never owned the land in controversy. Anton Janson acquired the

land in December, 1892, under a sheriff's deed. The plaintiff and his grantors have been in possession of the land for 25 years, under color of title and claim of right, supported by substantial consideration in the successive conveyances. Inasmuch as the record lends no support to the only title pleaded by the defendants, the case could be justly disposed of on this ground, without further discussion or consideration of the claims made in argument by the defendants, which are quite beyond any allegation of their pleading. We shall, however, give a brief consideration to the claims advanced in argument by the defendants. The basis of title thus put forth is twofold:

(1)    It is claimed that Anton Janson was the administrator of the estate of Frederick, his father, and was guardian of his minor children; that he invested the money of such estate in the purchase of the farm in question. It is urged, therefore, that the farm became the property of the widow and heirs of Frederick, because their money was invested in it.

(2)    It appears from the evidence that, when Anton Janson conveyed the land to Joseph H. Welp by a good and sufficient deed, Welp executed and delivered to Janson a bond for a deed at a stated price of $9,000, to be paid on or before one year, time being of the essence of the contract. This bond was signed by Welp alone. It was never recorded until shortly prior to the beginning of this suit. The filing of it created the cloud upon the title which became the occasion for the suit. The argument put forth is that the legal effect of the deed and bond was that of a mortgage, and that the mortgage has never been foreclosed, and that, therefore, the title still exists in Anton Janson. If the two instruments be treated as a mortgage, no tender of redemption therefrom is made. The assumption seems to be that, the mortgage debt having been barred by the statute of limitations, the original grantor has become entitled to reclaim his original title in fee simple. By intermarriage between the Janson, Lemker, and Welp families, all the parties to this litigation are in some degree related. The Frederick Janson estate amounted to less than $4,000. Anton Janson was the administrator, and was guardian of the minor children. Fred-

erick Janson was survived by his widow and six or seven children. Anton Janson died before the bringing of this suit. No claim was ever asserted against Anton in his lifetime, on behalf of the widow and heirs of Frederick Janson, as for a failure to account for the funds coming into his hands. Many years later, his bond was formally exonerated, upon the written request of the various beneficiaries. It does appear that the widow and children of Frederick Janson went into possession of the farm after its acquisition by Anton, and that they continued in possession after the conveyance by Anton to Welp, and after the conveyance by Welp to J. B. Lemker. Such possession continued until March 1, 1899. It appears also that, in January, 1899, J. B. Lemker, the then holder of the title, caused to be served upon this family a written notice, demanding possession of the farm. This demand was complied with, and the family moved from the farm on March 1st following. Thereupon, J. B. Lemker put a tenant in possession, and so continued in possession by tenant until the year 1910, at which time he sold the farm to his son, B. B. Lemker, for $110 per acre. B. B. Lemker continued in possession until the year 1913, at which time he sold it to the present plaintiff, Henry Lemker, for a consideration of $138 per acre. That these three successive grantees have been in actual possession under an adverse claim of right and color of title ever since March 1, 1899, is shown beyond all controversy. The most that is claimed by the appellants at this point is that these grantees, or some of them, knew, from conversations with the Janson family, that they claimed to have an interest in the farm. These alleged conversations are denied by the grantees. We have no occasion to determine the issue of fact thus presented by conflicting testimony. The evidence of this character would be more important if the plaintiff were claiming title as an innocent purchaser, and without regard to the statute of limitations. The fact, if such, that the defendants were making adverse claims, and that the plaintiff or his grantors knew of such adverse claims, did not destroy the adverse character of the possession maintained by such grantors and by the plaintiff. For the purpose of the statute of limitations, it

was enough that the possession was openly and in good faith adverse, and that it was maintained under color of title.

In support of their claim in argument, as distinguished from their claim in their pleading, the defendants have introduced much hearsay evidence, which is wholly incompetent. But if it were true that Anton Janson had bought the land in question with the funds of his mother and brothers and sisters, then, by a showing of such fact, they could have established a resulting trust, and they could have done so in January, 1899, when they were served with demand of possession. Their right to such remedy could not endure forever. On the other hand, if it were true that the deed and bond executed in December, 1892, amounted to a mere mortgage, then such defense was available in 1899. But neither of such defenses could stop the running of the statute of limitations in favor of successive grantees holding adverse possession.

It requires only a casual computation to show that, if the right of redemption were now opened up to these defendants, the exercise of it would cost them much more than the value of the land, as indicated by the purchase price paid by the plaintiff. This doubtless accounts for the failure of the defendants to tender redemption. Without such tender, their defense that the deed was intended as a mortgage is not available to them.

The case was properly decided by the district court, and its decree is, accordingly, affirmed.—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.