## STRYKER v. RASCH

(No. 2193; April 22, 1941; 112 Pac. (2d) 570)

(Rehearing denied June 11, 1941)

For the plaintiff in error, there was a brief and an oral argument by *L. A. Bowman* of Lovell.

38

* For the defendant in error, there was a brief and an oral argument by *Kent M. Crosby* of Basin.

BLUME, Justice.

This is an action brought by plaintiff Frank Rasch against L. V. Stryker, defendant, to quiet title to a piece of ground in the town of Lovell, described as the south half of Lot One of Block 9 in that town. Plaintiff took possession of the premises pursuant to contract with one Robertson who had purchased the lot from Big Horn County. He is not, accordingly, in privity with the mortgagor herein mentioned. He pleaded that he entered upon the premises on April 28, 1928, and has ever since been in actual, open, notorious, continuous, hostile and exclusive possession thereof against the world; that defendant Stryker claims an interest therein, which is, however, without foundation, and should be held to be barred. Plaintiff's evidence showed that he had been in such adverse possession for twelve years prior to the commencement of this action, and that fact is not disputed by the defendant Stryker. The latter, however, filed a cross petition in the case, setting forth that one Kelsy,

then owner of the premises, on November 30, 1921, executed to him a note for $700 and a mortgage on the premises to secure it, and he asked that the mortgage be foreclosed, and held to be prior in right to that of the plaintiff. By his reply the plaintiff alleged that he did not know anything about this mortgage, but that if it exists, it is of no avail against the title of the plaintiff. It was stipulated by the parties, and by Kelsy, who was also a party to the action, that the note in question "is an unpaid promissory note, the amount due thereon being as specified in the cross petition, and that the mortgage described in the cross petition is a duly recorded mortgage, and has never been released or satisfied." The court entered judgment for plaintiff, from which the defendant Stryker has appealed. The parties will be referred to herein as in the court below.

The statutes which have a bearing in this case are Section 89-406, Rev. St. 1931, which provides that "an action for the recovery of the title or possession of lands, tenements or hereditaments, can only be brought within ten years after the cause of action accrues," and Sections 89-408, -409, which provide that an action on any contract in writing is barred within ten years after the cause of action accrues.

■ Plaintiff claims that his title by adverse possession is good against the world, in all cases, including a mortgagee, while the defendant claims that no adverse possession can avail against a mortgagee, while the mortgage exists, for the reason that, until such mortgage is foreclosed, the mortgagee has no right to bring an action for the recovery of the real property, and he calls attention to the fact that an action of foreclosure is not such action (Balch v. Arnold, 9 Wyo. 17, 59 Pac. 434). Contrary to expectation, the law on the subject of adverse possession against a mortgagee or a lien holder is not at all clear. The case is one of first im-

pression in this jurisdiction, and in order to arrive at a proper conclusion, we have deemed it best to consider the various situations which may arise. We have found no adequate treatment of the subject anywhere, and we have, accordingly, found it necessary to make our search of the authorities as complete as possible. The record fails to disclose when the indebtedness secured by the mortgage in question was due, so that we must assume herein that it was due at once, as held in some of the cases, or at least within a reasonable time thereafter (37 C. J. 817-818), and at least during the year 1922.

Plaintiff in this case relies upon the rule stated in 2 C. J. S. 804, that "liens against the true owner which are dependent on his title are destroyed by possession for the statutory period adverse to the true owner since the title acquired by adverse possession is not a derivative but an independent paramount title." Much of what is said by the majority in McClanahan's Adm'r. v. Norfolk and Western Ry. Co., 122 Va. 705, 96 S. E. 453, sustains the sweeping view here expressed, under a statute somewhat broader than ours. But the court actually and expressly limited the decision, holding that if adverse possession is taken prior to the creation of the lien, then the lienholder acquires his right subject to the rights of the adverse possessor, and the adverse possession is completed within the statutory time. One justice dissented; another agreed with the majority that adverse possession taken before the acquisition of the lien runs against the latter, but specifically held the contrary in case the lien is acquired prior to the time when adverse possession is taken, holding that in such case the lienholder cannot be prevented from enforcing his lien within the time given by statute. The decision, limited by the majority as above mentioned, is sustained by Schafer v. Hauser, 111 Mich. 622, 70 N. W. 136, 37 L. R. A. 835. In that

case adverse possession of the land was taken in 1870. The mortgage there in question was executed by the owner in 1873. It was held that the mortgagee had no greater right to oust the adverse possessor than the owner of the land, stating in part that "we cannot subscribe to the contention that a mortgagee can assert a right against one in possession of land holding adversely that could not be asserted by the mortgagor if the mortgage had not been made. To do so would be to hold that the owner of the legal title could at any time suspend the running of the statute of limitations by simply executing a mortgage payable at some time in the future." The holding in LeRoy v. Rogers, 30 Cal. 229, 89 Am. Dec. 88, was similar. It is probable that the adverse possession in that case commenced before the mortgage there in question, although that does not appear expressly, and it may be that the court meant to hold that a mortgagee has in no case a greater right than the original owner. If so, it probably would not be consistent with later cases in California. In Virginia & West Virginia Coal Co. v. Charles, 254 Fed. 379, the court, in accordance with Federal rules, followed McClanahan's Adm'r. v. Ry. Co., supra. The holding of these cases, limited as above mentioned, cannot be said to be illogical, at least in case of a mortgage, since a mortgagee should take notice of the rights of the person who is in possession of the premises at the time when he takes his mortgage. Jones on Mortgages (8th ed.) Sec. 718; Perry v. Markle, 127 Nebr. 29, 254 N. W. 692. It is not, however, necessary to decide the point herein, and we refrain from doing so. It might, perhaps, be argued, as was virtually done by Mr. Justice Burke in McClanahan's Adm'r. v. Ry. Co., supra, that so long as a mortgagor is still the owner of land, he has the right to give a mortgage thereon, which may be foreclosed within the time given by statute.

■ In the case at bar, the mortgage was given before the adverse possession commenced, and what follows herein relates to such situation. Does the same rule apply as when adverse possession is prior? It may be argued that if in the latter case a mortgagee takes subject to the rights of the adverse possessor, an adverse possessor who has actual or constructive knowledge of a mortgage should take subject to the rights of the mortgagee. A mortgagor's possession is not ordinarily adverse to the mortgagee (1 Am. Jur. 812), and it appears to be a general rule (the full extent of which we need not determine), that the successors in interest of a mortgagor, and in privity with him, such as grantees, ordinarily, at least, take no greater right than the grantor, and acquire the land subject to a mortgage given by the grantor, of which they have actual or constructive knowledge. Jones on Mortgages (8th ed.) Sec. 1540; Doyle v. Mellen, 15 R. I. 523; Stokes v. Maxwell, 53 Ga. 657; Fry v. Shehee, 55 Ga. 208; Moerbe v. Beckman (Tex.), 132 S. W. (2d) 616; First State Bank v. Cook, 192 Ark. 213, 90 S. W. (2d) 510. Why not an adverse possessor who is not, as in this case, in privity with the mortgagor? The rights of the latter are antagonistic to the rights of the mortgagor; his claim is against the world, and courts have been inclined to treat him differently from a grantee, probably on the ground of the policy of the law to give such adverse possessor a title when an action to recover land is barred by the statute of limitations. See McClanahan's Adm'r. v. Ry. Co., supra, and cases hereinafter mentioned. In Elmendorf v. Taylor, 10 Wheat. 153 (1825), the court held that in analogy to the limitations governing actions to recover real property at law, (which was then 20 years) every equitable right in property is likewise barred. The court followed the decision in Cholmondeley v. Clinton, 2 Jac. & Walker, 37 Engl. Reprint

527, 577. While these cases did not involve a mortgage, the scope of the decision would include it. No particular reason existed to exclude it, for, as stated in Jones on Mortgages, supra, Sec. 12, "At common law the legal estate vested in the mortgagee * * *. The mortgagee has something more than a mere lien; he has a transfer of the property itself and a legal estate in it, giving him a standing at law as well as in equity." Other cases, doubtless influenced by the rule at common law relating to mortgages, indicate, or decide, that a mortgagee is barred from attacking a title by adverse possession in the same manner, and at the same time, as the mortgagor. In Poignard v. Smith, 8 Pick. 272, and Dadmun v. Lamson, 9 Allen 85, it was held that when land is mortgaged, a person who by taking possession of it disseises the mortgagor, disseises also the mortgagee. The cases did not involve the acquisition of title by adverse possession. But if a man who ousts the mortgagor also ousts the mortgagee, it would seem that such title would, under the former doctrine of the relation of the mortgagee to the property, be acquired against the mortgagee as soon as it would be acquired against the mortgagor. In Coulter v. Phillips, 20 Pa. 154, the court distinguishes between adverse possession by a stranger and one by a grantee of the mortgagor, and the court held that "twenty one years adverse possession by an intruder, or a stranger to the defendant (the mortgagor) may avail to defeat the rights and remedies of a lien creditor. A possession that would bar the debtor, would divest the rights of his creditor. But a party coming into possession under, and according to the title of the defendant, takes it cum onere (with the burden), and the creditor's relation to the land remains unchanged." In Ely v. Wilson, 61 N. J. Eq. 94, 47 Atl. 806, it appears that a mortgage was given in 1845. Thereafter the mortgagor conveyed part of the

land to third parties, but not subject to the mortgage. No claim was ever made of the purchasers for the payment of any money due under the mortgage, and no rights of the mortgagee were ever admitted by the purchasers. It was held that the lien of the mortgage was lost during the statutory period which bars the recovery of real property as to the portions sold, though the debt was kept alive by payments made by the owner of the other portions. The court stated that if the owner out of possession "desires to preserve his title he must see to it that no person is in the actual possession not only of the whole, but also of any part of the land, under a claim of title adverse to him. The mortgagee must do the same." The court further stated that if the mortgagee desired to retain his lien against the portions sold, he either should have caused the purchasers to acknowledge the lien, or he should have foreclosed. In citing this case, and construing it, the court in Swinley v. Force, 78 N. J. Eq. 52, 78 Atl. 249, stated: "The stranger who occupies under an open claim of absolute ownership holds adversely to the mortgagee's estate from the start. After 20 years of such adverse possession, his defense under the statute of limitations, at law and in equity, against the mortgagee, is complete, although the debts may have been kept alive by the obligor of the bond, and may remain in full force against him." The statement was, we think, by way of obiter dictum. In the case of Glezen v. Haskins, 23 R. I. 601, 51 Atl. 219, 220, the court stated that "the defendant in this case is not privy in title with either the mortgagor or mortgagee. On the contrary he claims by a title of possession adverse to both. If he has had such possession for the statutory time, he holds the estate against both, whether the mortgage is regarded as paid or not." The statement was, perhaps, dictum. In Stokes v. Maxwell, 53 Ga. 567, the court held that a stranger to the title

of the mortgagor may acquire title by adverse possession for the statutory time against a mortgagee. It appears inferentially that the adverse possession commenced after the giving of the mortgage. In the case of Blalock v. Webb, 190 Ga. 769, 10 S. E. (2d) 747, the court held that a claimant under a will who took possession of property could acquire a title by adverse possession against a security deed, securing an indebtedness. By security deed we understand an absolute deed, intended as security. While expressions in the opinion indicate that the court thought that all liens and mortgages may be divested by adverse possession, the decision may be explained by the fact that the holder of a security deed, having absolute title, may bring an action in ejectment at any time, against an intruder. The rule in Georgia seems now to be governed by a special statute, passed in 1937. See Sweat v. Arline, 186 Ga. 460, 197 S. E. 893, 896.

A mortgage has occupied an anomalous position in the law almost since the time of the advent of equity, and while it was considered as conveying the title to the mortgagee at law, equity treated it as a lien. Its nature is not treated uniformly in the various jurisdictions in the United States even now. Jones, Mortgages, supra, Sec. 18 sqq. However, it is generally held that the mortgagee is not entitled to possession against the mortgagor until after default. And in many states, as in this (Robinson Merc. Co. v. Davis, 26 Wyo. 484, 187 Pac. 931), a mortgage is considered but a lien even after default, giving the mortgagee but the right to foreclose, without the right to bring an action to recover the property until that is done. See Jones, Mortgages, supra, Sec. 18 sqq. While, therefore, the foregoing cases may be said to have announced a rule that adverse possession, initiated after the giving of a mortgage, is complete against a mortgagee during the same time and in the same manner as against a

mortgagor, they cannot be said to be of persuasive force under modern doctrines in those states which have not passed on the question, and particularly if a mortgage is held to be a mere lien even after condition broken. The change in one rule of law may have its effects on others, and in such case, courts must necessarily make the proper adjustments in all rules which are thus affected, in order that the law may remain reasonably harmonious. If a mortgage is but a lien, and no action to recover the land lies thereunder against the mortgagor until after foreclosure and sale, it would be anomalous to hold that such action lies, nevertheless, against an adverse possessor, as at common law. While the former rule relating to the nature of a mortgage was in force, there was no special statute of limitation pertaining to such instruments. The right of the mortgagee to foreclose was presumed to be barred after the lapse of the period prescribed by the statute for enforcing a right of entry upon land, which was then 20 years. Jones, Mortgages, supra, Sec. 1530; 37 C. J. 743. Most states now have special statutes relating to, or which are construed as relating to, the time within which mortgages may be foreclosed. Jones, supra, Sec. 1531; 37 C. J. 743. The right to foreclose is granted in general terms. It is not limited to the foreclosure of the rights of the mortgagor and his grantees. In view of the fact that the mortgagee has no right to recover the land until foreclosure and sale, as above mentioned, and in view of the fact that it would be unjust to hold that adverse possession runs against a mortgagee without the right to protect himself (2 C. J. S. 514), the right to foreclose, with the right to acquire title in connection therewith, must exist as against the world, including an adverse possessor, during the time thus granted by statute. And it has been so held. (Coe v. Finlaysen, 41 Fla. 169; Comstock v. Finn, 13 Cal. App. (2d) 151, 56 P. (2d)

957. The same rule has been applied in case of a statutory lien. Moses v. Major, 201 N. C. 613, 160 S. E. 890; Parker's Adm'r. v. Clarkson, 39 W. Va. 184, 19 S. E. 431; Pratt v. Pratt, 96 U. S. 704. The minority view in McClanahan's Adm'r. v. Ry. Co., supra, is in harmony therewith and statements contained in the majority opinion indicating the contrary cannot be considered as sound.

■ There can be no doubt, accordingly, we think, that if the defendant in this case had brought an action to foreclose his mortgage within the time allowed him by the statute, his right to do so, with full effect, could not have been defeated by a claim of adverse possession. But the defendant brought no such action within that time. And that brings us to the crucial question in this case. While the agreed statement of facts is not clear, counsel for the defendant seems to construe it as meaning that the indebtedness secured by the mortgage is still an enforceable obligation at least as to the mortgagor. Perhaps that is true, in view of the fact that Kelsey joined in the statement, and we shall consider the case in that light. A material question then seems to be as to when adverse possession is initiated against a mortgagee. We take it that it would be at once, if the adverse possessor has no actual or constructive knowledge. Perry v. Markle, 127 Nebr. 29, 254 N. W. 693. So it becomes important only to inquire whether that is true also in case the adverse possessor has actual or constructive knowledge of the mortgage. In this case he had constructive knowledge, when he initiated his adverse possession. The primary purpose and result of adverse possession is, of course, to divest another—the true owner, if any—of his rights in the property. And while we need not say that possession might not be adverse to a lien holder or mortgagee, while it is adverse to the true owner (see 28 Yale L. J. 221), it would seem that ordinarily at least, if the pos-

session is actually adverse, it is adverse to every one who may have an interest in the property, in so far as the law allows it to be so. Several cases already cited are to that effect. It is held that a person who has an interest in the land may set up the fact that the mortgagee is barred from bringing his action of foreclosure. 37 C. J. 718; Graves v. Seifried, 31 Utah 203, 87 Pac. 675; Brandenstein v. Johnson, 140 Cal. 29, 73 Pac. 744; Kiel v. Staber, (Tex. Civ. App.) 116 S. W. (2d) 809; Hurley v. Cox, 9 Nebr. 230, 2 N. W. 705. (Contra: Gibson v. Ast, 77 Kans. 458, 94 Pac. 801.) In most of these cases, adverse possession was claimed by the person setting up the defense. The fact that it was permitted shows that the courts considered the adverse possession to have been initiated prior to that time. The court in Waterman Hall Apt. v. Waterman, 220 Ill. 569, 77 N. E. 142, 4 L. R. A. N. S. 776, stated that "the possession of one claiming the exclusive ownership of land is adverse to all the world." In Blalock v. Webb, 190 Ga. 769, 10 S. E. (2d) 747, 748, the court stated:

"The very purpose of the law in providing for prescriptive title is to extinguish the claims of all others in the land. If such adverse possession ripened into title that was good only as against those having no claim to the land, the law would be useless and could serve no purpose. The manifest purpose of the law is to establish title that is good against all legal and legitimate rights and title formerly held by others, but forfeited by reason of adverse possession. Whether such rights are founded upon a mere lien such as a mortgage, upon title for a limited purpose such as a security deed, or upon absolute and unconditional title makes no difference."

If that is correct, and we believe it is, then it is reasonable to hold that title by adverse possession is, at least in the absence of facts or circumstances showing the contrary, initiated against a mortgagee from the

time when hostile and exclusive possession is taken of the property, in harmony with the Massachusetts and other cases above cited that disseisin of the mortgagor is a disseisin of the mortgagee, but with the results necessarily modified as herein mentioned by reason of the modern difference in the relationship of the mortgagee to the property. It has been said that such adverse possession is ineffectual, or not a true adversary holding against a lien while the latter may be lawfully enforced. Parker's Adm'r. v. Clarkson, and Pratt v. Pratt, supra. That, in a sense, is true. A somewhat different, and perhaps better, way to express the situation, in the light of modern rules relating to mortgages, is, that in such case the rights of a lienholder or mortgagee against an adverse possessor are rights to interrupt this possession within the time allowed by statute and thus break the period required by statute to acquire title by adverse possession. This puts the situation in a clear, harmonious and logical light, and includes within the rule, which would not otherwise be true, a case in which the lien or mortgage has not been enforced within the time allowed by statute, and the lien-holder or mortgagee thus has failed to avail himself of the opportunity to protect himself. A mortgagee, then, may commence his action to foreclose within the time permitted by statute, that is, in this state, within ten years after the mortgage becomes due, and if he does so then, at least if he makes the adverse possessor a party (see Jones, supra, Sec. 1541; Thornely v. Andrews, 40 Wash. 580, 82 Pac. 899, 1 L. R. A. N. S. 1036), previous adverse possession cannot deprive him of his rights and cannot again be initiated against him until he is entitled to a deed under foreclosure. See 118 A. L. R. 946, note. By analogy, the rights of a mortgagee who forecloses under power of sale should be the same against an adverse possessor, as the rights of one who forecloses by action, in order

that all statutes herein involved may be construed reasonably and in harmony.

This holding, we think, fully protects the mortgagee. He is given (1) the time from the execution of the mortgage until the due-date thereof, under an agreement made prior to the adverse entry; (2) ten years thereafter; (3) the additional time between the due-date of the mortgage, and the time when adverse possession is taken, provided that the rights against the mortgagor are not barred during this additional time. Should he have the further right of extending the time for payment and for foreclosure after adverse possession has been initiated? We must bear in mind the fact that the courts have given a broad construction to the statute relating to the time for bringing an action to recover real property, and they have almost universally held that such statute is not merely a statute of limitation, but that when adverse possession for the statutory period is held, the adverse possessor is vested with full, new and distinct title. 2 C. J. S. 803-804; 16 N. Y. L. J. 535 sqq; 1 Am. Jur. 794, 796. In England it was deemed advisable to make that the rule under a special statute more than 200 years ago, after former statutes had been found to be insufficient. 2 C. J. S. 804, note. We are not disposed to create an irritant among this almost universal holding. We shall, accordingly, while protecting a mortgagee to an ample extent, not put a construction on the statute relating to actions for the recovery of land which would in many cases almost annul it. If a mortgage may be extended after adverse possession commences, it would follow that by such extension, perhaps by agreement between the mortgagor and mortgagee, title by adverse possession could be defeated for an unlimited time— for 50 or 100 years. In Schafer v. Hauser and LeRoy v. Rogers, supra; Lemker v. Unknown Claimants,. 201 Ia. 902, 208 N. W. 290 (see also Perry v. Markle,

supra), it was held that the statute relating to adverse possession cannot be suspended by merely executing a mortgage. See also 2 C. J. S. 722, note 23. In order to give a reasonable interpretation to that statute, it should not be able to be suspended by a mere extension of the indebtedness or by undue delay of foreclosure, after adverse possession commences. The statement in Ely v. Wilson, supra, may well be applied in such case, namely, that the mortgagee should foreclose within the proper time, or obtain the recognition in the proper manner, of the adverse possessor, that he holds subject to the mortgage. It does not appear herein whether the indebtedness on the mortgage in question was extended—if it was—before or after the adverse possession in this case commenced. Plaintiff made a prima facie showing that he had title to the land. The indebtedness under the mortgage herein was due in 1922. If it was extended before adverse possession commenced, and the statutory time since then has not run, the defendant should have made that showing. He has not done so, and the judgment of the district court must, accordingly, be affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.

### ON PETITION FOR REHEARING

BLUME, Justice.

A petition for rehearing has been filed herein by the cross-petitioner in this case. He contends that when an indebtedness is still alive as against a mortgagor, a person in adverse possession of the premises is not permitted to plead that the indebtedness is barred, for the reason that he is not in privity with the mortgagor, and the bar of the statute may be raised only by one in such privity. Counsel have overlooked the authorities which we cited in the original opinion to the effect

that a person who has an interest in the land may set up the fact that a mortgagee's right is barred. 37 C. J. 710 and other authorities cited.

It is further contended that, even though the plaintiff may set up the statute, he did not do so in this case, and that such failure requires a judgment for the cross-petitioner herein. In that connection counsel complains because we assumed that the mortgage became due some time in 1922. The agreed statement of facts showed that the note was due, but did not show the time thereof. Hence it is in no manner inconsistent with our assumption. For some unaccountable reason the cross-petitioner failed to state in his pleading when his note and mortgage became due, and we, accordingly, assumed it to be due at once or within a reasonable time. We asked his counsel on the oral argument as to the due date, but he was unable to inform us. He knew, accordingly, that we were searching for light on the subject in order not to do any injustice, but he has failed to give it even in his petition for rehearing. In all probability, accordingly, and particularly when we take business usage into consideration, the note and mortgage of the cross-petitioner is actually barred, and to send the case back merely to give the plaintiff the opportunity to amend his pleadings—which in any event we should do under the circumstances of this case if it were necessary—would subserve no good purpose, and we might well deny the petition for rehearing on that ground.

It is ordinarily true that a claim that a cause of action is barred by the statutes of limitation must be specially pleaded. 37 C. J. 1213. A suit such as that before us involves two statutes of limitation, one, relied upon by plaintiff, relating to the time in which an action to recover real property may be brought—conferring title in the absence thereof—and one relating to the time in which foreclosure of a mortgage may be

instituted. The periods happen to be the same under our statute—ten years. Counsel for the cross-petitioner argues that plaintiff should have pleaded specifically that the foreclosure of the mortgage is barred pursuant to the statute relating thereto—in other words, that plaintiff, relying on the statute relating to adverse possession, did not by that fact rely on the statute governing the time in which foreclosure of a mortgage may be had. Counsel for plaintiff argued that the bar of any statute has been sufficiently pleaded in the petition. Plaintiff alleged that he acquired title by adverse possession during a period of ten years, and that the cross-petitioner is barred from asserting whatever rights he had by reason of not asserting them during that period. Perhaps the allegations of the petition do not go quite far enough, on the theory of counsel for the cross-petitioner, in that they do not state that the rights of the cross-petitioner are barred by reason of not asserting them within ten years *after the cause of action accrued,* unless, possibly, that may be gathered from the implied statement that the cross-petitioner should have asserted his rights within that time. However that may be, assuming that it would have been better if plaintiff had been more specific, we do not think that the failure in that respect, particularly in view of the rule hereinafter stated, should be held to be fatal in this case. Courts, if they can, will avoid deciding a case on technical grounds. It must be borne in mind that the rule requiring the statute of limitations to be set up has its basis, in a case involving a contractual debt, first, in the fact that it is an affirmative defense, and second, that a debt is not extinguished by the statute, but that a moral obligation to pay remains; that, accordingly, the right to set up the statute is a privilege which may be waived, and that it is waived if not set up. Thus Wood, Limitations of Actions (4th ed.) Sec. 7, states that the *debtor* must

interpose the plea of limitation. In a case like that at bar, in which the adverse possessor is not the debtor, no moral obligation for him to pay exists or remains, and such case cannot be treated in the same way as a case in which the bar of the statute is interposed by the debtor, and the only reason why he should do so is that the plea is an affirmative defense. And in the ordinary case, to which this case should be likened in this connection, the main, if not the only, reason for requiring such defense to be set up is to give the opposite party notice thereof, so that he may be able to meet it. Plaintiff's petition fully advised the cross-petitioner that all of his rights, of whatever nature, were claimed to be barred. The allegations thereof are wholly inconsistent with the recognition of any rights of the latter under the mortgage.

Furthermore, the rule appears to be that such affirmative defense is not necessary in cases in which the statute extinguishes the right or title. 34 Am. Jur. 339. The rights of the cross-petitioner were not extinguished by the statute relating to the time when foreclosure of a mortgage may be instituted. But they were extinguished, under the conditions and limitations set forth in our original opinion, pursuant to the statute under which title by adverse possession may be acquired. We held in the original opinion that adverse possession applies against the world from the time when such possession is first taken, and that the right of the mortgagee is substantially a right to interrupt that possession during the time within which he has the right to foreclose his mortgage. In other words, the right of the mortgagee to foreclose operates in the nature of an exception to the rule that adverse possession ripens into title during the prescriptive period. It has been held that when an adverse claimant has shown proper adverse possession during the prescriptive period, the burden to show that the period

was interrupted is on the party who seeks to benefit thereby. Vance v. Ellerbe, 150 La. 388, 90 So. 735; Howell v. Garlington (Tex. Civ. App.), 270 S. W. 269. The interruption in this case could be made to appear only by a foreclosure herein commenced within the time allowed, by statute, but on the face of the cross-petition, as construed by us, the contrary appears. The same result follows from the general rule stated in 2 C. J. S. 818 (2 C. J. 264), that "where the party relying on adverse possession has established the facts necessary to show title thereby, the burden is on the parties denying the title to defeat the case so made." In the case at bar, the plaintiff made out a prima facie case to show title in himself by adverse possession. According to the rule just stated, the burden then devolved on the cross-petitioner to show that he still had a lawful right to foreclose his mortgage. He failed to do so, as shown on the face of the cross-petition. That is the conclusion we arrived at in the original opinion, and under the rule just stated, we see no reason why we should depart therefrom. There is nothing in the agreed statement of the parties herein which in any way is in conflict herewith. It cannot, we think, as counsel for cross-petitioner seemingly would have us do, be fairly construed as meaning that the note and mortgage is an unpaid and existing obligation of the plaintiff, but only that of the mortgagor. All the circumstances point to that conclusion, although, perhaps, counsel for plaintiff should have been somewhat more circumspect.

We see no reason for rehearing, and the petition therefor is, accordingly, denied.

*Rehearing denied.*

RINER, Ch. J., and KIMBALL, J., concur..